NORRIS, Judge.
This is an unemployment compensation case. The employee, Janice Thompson, voluntarily resigned her post of computer supervisor at Pelican Homestead & Savings Association. The claims adjudicator found her resignation was without good cause and disqualified her but the appeals referee and every successive tribunal found her not disqualified. Pelican appeals and we affirm.
The appeals referee made the following findings of fact. Mrs. Thompson had worked with Pelican’s predecessor, Bastrop Federal Savings & Loan, since 1972. She had reached the position of treasurer, earned $1,150 a month and worked only 28 hours a week. She had negotiated her favorable weekly hours by foregoing a number of pay raises in exchange for a few afternoons off each week.
On October 1, 1983, appellant bought Bastrop Federal. Pelican installed a new on-line computer system and made Mrs. Thompson computer supervisor. She agreed to put in 40-hour weeks until she had mastered the new system, with the understanding that she could resume her old schedule later. In December, she decided she could return to her old hours. Her supervisor, Mr. Stacks, told her that she could do so, but that she would have to take a commensurate cut in pay. He also said that she could keep her pay scale intact if she would continue working 40-plus hour weeks. Faced with this option, Mrs. Thompson resigned on December 15.
Judicial review of administrative hearings under the unemployment compensation law is governed by LSA-R.S. 23:1634, which provides in part:
the findings of the board of review as to the facts, if supported by sufficient evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law.
Thus our review is confined to two questions:
(1) Whether the board of review’s decision was based on sufficient, competent evidence, and
*644 (2) Whether, as a matter of law, the board’s findings of fact justify the deci- ■ sion.
Banks v. Adm’r, 393 So.2d 696 (La.1981); Cox v. Lockwood, 373 So.2d 246 (La.App. 4th Cir.1979). Since the evidence supports the findings and there is no allegation of fraud, we accept the findings and turn to the legal question.
A claimant must be disqualified for benefits if he has left his employment without good cause connected with employment. LSA-R.S. 23:1601(1). Good cause is generally defined as
cause connected with working conditions, ability of the employee to continue employment, availability of transportation to and from work, and other factors which affect the employee’s ability or right to continue work or which affect the benefits he may receive from his employer upon continuation of work or retirement.
McGraw v. Director of Postal Data Center, 319 So.2d 797 (La.App. 1st Cir.1975).
The referee and the board below interpreted the facts as the equivalent of a forced pay cut. We are in complete agreement. The proposal was for Mrs. Thompson to work about 12 more hours a week or to take about a 30% pay reduction. The law is very well settled that a substantial pay cut is good cause connected with employment. Jantzen of La. Inc. v. Blache, 464 So.2d 33 (La.App. 3d Cir.1985); Robertson v. Brown, 139 So.2d 226 (La.App. 1st Cir.1962).
In our recent case of Nason v. La. Dept. of Emp. Sec., 475 So.2d 85 (La.App. 2d Cir.1985), writ denied 478 So.2d 149 (La. 1985), we faced a similar issue. There, a fireman had accepted employment with the city of Bastrop with the understanding that he, as a municipal employee, would be exempt from social security contributions and that the city would pay his hospitalization insurance premiums. When Congress changed the law and the city changed its policy, Mr. Nason was forced to make contributions that decreased his earnings by about 10%. We held this was a substantial enough decrease to amount to good cause and to qualify him for benefits. Mrs. Thompson’s decrease is even larger and we have no difficulty finding it substantial.
We are sensitive to Pelican’s argument that mere dissatisfaction with working conditions does not constitute good cause. McGinnis v. Moreau, 149 So.2d 188 (La. App. 3d Cir.1963). We also realize that “pressure” on the job is not good cause. Cosby v. Lockwood, 395 So.2d 911 (La.App. 2d Cir.1981). No doubt Mrs. Thompson felt dissatisfaction and pressure at Pelican. The source of these sentiments, however, was not Mrs. Thompson’s personal whim but Pelican’s pay proposal. The specifics of this situation easily overcome the general rules Pelican has relied on in brief.
We are also sensitive to Pelican’s position as a successful savings and loan in the midst of economic hard times. “The fact that Bastrop Federal was acquired by Pelican,” it asserts in brief, “speaks for itself. No Business or Homestead can afford to pay non-competitive rates and hope to continue in business.” Trial brief, 3. This is true but it is also an admission of the drastic measures Pelican undertook to make its new operation more profitable. Pelican may be economically justified in cutting salaries. The affected employees are justified in resigning with good cause.
Pelican also argues that Mrs. Thompson’s conduct in not accepting the 40-hour proposition was tantamount to refusing suitable employment. LSA-R.S. 23:1601(3). This argument is based on the hypothesis that if Mrs. Thompson went to any other financial institution in the area and applied for a similar job, the job would require her to work extra hours or to work for less, and Mrs. Thompson would reject it. There is no evidence, however, that Mrs. Thompson received any suitable offer and declined it. Thus Pelican’s assertion is speculative and meritless.
The judgment of the trial court is affirmed. Costs will not be assessed. LSA-R.S. 23:1691, LSA-R.S. 13:5112 C, Cities *645 Service v. Adm’r, 383 So.2d 1315 (La.App. 3d Cir.1980).
AFFIRMED.